### UNITED STATES

v.

**Michael R. OATNEY, 518 06 0456, Lance Corporal (E–3), U.S. Marine Corps.**

### NMCM 92 02024.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 30 April 1992.

Decided 4 Nov. 1994.

Maj Hagen W. Frank, USMC, Appellate Defense Counsel.

LT Scott A. Browne, JAGC, USNR, Appellate Government Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

1. I. THERE IS INSUFFICIENT EVIDENCE TO FIND APPELLANT GUILTY BEYOND A REASONABLE DOUBT OF CHARGE II AND CHARGE III AND THE SPECIFICATIONS THEREUNDER.

II. THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION FOR A FINDING OF MULTIPLICITY AS TO CHARGE II AND SPECIFICATION 1 OF CHARGE III.

III. TRIAL COUNSEL'S CLOSING ARGUMENT ON THE MERITS IMPLIEDLY COMMENTED ON APPELLANT'S EXERCISE OF HIS RIGHT TO REMAIN SILENT GUARANTEED BY THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 31, UNIFORM CODE OF MILITARY JUSTICE, 10 U.S.C. § 831.

IV. APPELLANT'S PLEA TO CHARGE I AND ITS SPECIFICATION IS IMPROVIDENT WHERE THE MILITARY JUDGE FAILED TO ASCERTAIN THAT APPELLANT WAS NOT

REED, Senior Judge:

■■■ This case involves several assignments of error, most of which are addressed later in this opinion.[1] Of primary concern to us is the multiplicity issue raised by the appellant in his second assignment of error. In that regard, we are called upon to interpret the doctrine of multiplicity as enunciated by the U.S. Court of Military Appeals in *United States v. Teters*, 37 M.J. 370 (C.M.A. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994). Our case involves a determination of whether obstruction of justice and the communication of a threat are multiplicious offenses for findings and sentencing. Factually, in appellant's case, the communication of the threat was proven as the means of obstruction of justice. Nevertheless, we find that these two offenses are not multiplicious for findings or sentence. We hold the following:

(1) Offenses are multiplicious for findings if:

(a) each *does not necessarily* require proof of an element required to prove the other— in such a determination we will not look to the pleadings or the proof but only the statutory or generic elements of the offenses charged. *See United States v. Schoolfield*, 40 M.J. 132 (C.M.A.1994); or

(b) one offense is listed as a lesser-included offense of the other,[2] either by Congress

SUFFICIENTLY INTOXICATED TO NEGATIVE [sic] THE SPECIFIC INTENT REQUIRED FOR THE AGGRAVATED ASSAULT ALLEGED.

2. As our Air Force brethren noted in *United States v. Weymouth*, 40 M.J. 798 (A.F.C.M.R. 1994), a multiplicious offense is not necessarily a lesser-included offense but a lesser-included offense is always multiplicious with the greater offense. The doctrine of lesser included offenses permits a conviction on a diminished charge when the prosecutions proof is lacking on an element of the charged crime. Inherent in this doctrine is an accused's Sixth Amendment right to notice before trial of the charge brought. Consequently, a lesser-included offense does not constitutionally exist unless the charged offense provides notice to the accused that a conviction may lie for the included offense.

*Weymouth*, at 801 (citations omitted). Multiplicity, on the other hand, "focuses on whether Con-

in the Uniform Code of Military Justice [hereinafter "UCMJ" or "the Code"] or the President in the Manual for Courts–Martial, United States, 1984 [hereinafter "MCM" or "the Manual"];[3] or

(c) there is some other manifestation by Congress that such offenses are multiplicious for findings.

(2) If offenses are multiplicious for findings, they are also multiplicious for sentencing; if they are not multiplicious for finding purposes, then they are not multiplicious for sentencing. Thus, if offenses are separate for findings, they are separate for punishment, and the maximum authorized punishment is found by combining the punishments authorized for each individual offense.

(3) *Teters* applies retroactively.

(4) "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts–Martial [R.C.M.] 307(c)(4) discussion. The military judge retains discretion to dismiss specifications brought in contravention of this policy.

### HISTORY OF THIS CASE

On 16 July 1993 the appellant filed a brief with this Court assigning four assignments of error.[4] Subsequently, a panel of this Court specified an additional issue to be briefed by counsel:

HOW DOES *UNITED STATES V. TETERS*, 37 M.J. 370 (C.M.A.1993), AFFECT THIS COURT'S EVALUATION OF THE APPELLANT'S SECOND ASSIGNMENT OF ERROR? IS *TETERS* APPLICABLE TO APPELLANT'S CASE

AND DOES IT CHANGE THE CONCEPT OF "MULTIPLICITY FOR SENTENCING" AS DISCUSSED IN DISCUSSION, RULE FOR COURTS–MARTIAL 1003(c)(1)(C)?

On 29 April 1994, an unpublished panel decision was issued addressing the assignments of error as well as the specified issue. On 18 May 1994, the Government submitted a Motion for Reconsideration and Suggestion for En Banc determination of the issues arising out of the panel decision dealing with the specified issue. On 22 June 1994 this Court issued an order wherein we agreed to reconsider en banc the panel decision and ordered oral argument. Oral argument was subsequently held on 12 August 1994. We now withdraw the panel decision of 29 April 1994.

### FACTS

The appellant was tried before a general court-martial, military judge alone, on 30 April 1992. He was charged, among other things, with obstruction of justice by communicating a threat to a PFC G on 16 January 1992 (Charge II, Specification 1), communicating a threat to PFC G on 16 January 1992 (Charge II, Specification 2), and communicating an additional threat to PFC G on 27 January 1992 (Charge II, Specification 3), all in violation of Article 134, UCMJ, 10 U.S.C. § 934 (1988). The appellant entered not guilty pleas to these offenses but was found guilty.[5] Both the obstruction of justice offense of 16 January 1992 (Charge II, Specification 1) and the communication of a threat on 16 January 1992 (Charge II, Specification 2) involved the same threat and are the subject of the specified issue.[6] In fact, to

gress intended to subject an accused to multiple convictions and punishments for the same act or course of conduct." *Id.*, at 801. However, the double jeopardy clause prohibits conviction and punishment for both the greater and the lesser-included offense. *Brown v. Ohio*, 432 U.S. 161, 165–69, 97 S.Ct. 2221, 2225–27, 53 L.Ed.2d 187 (1977).

**3.** *See United States v. Wheeler*, 40 M.J. 242, 247 (C.M.A.1994).

**4.** *See* footnote 1, *supra.*

**5.** The appellant was also charged with robbery under Article 122, UCMJ, 10 U.S.C. § 922 (1988)

(Charge I). Pursuant to his pleas, however, he was found guilty of the lesser included offense of assault by intentionally inflicting grievous bodily harm in violation of Article 128, UCMJ, 10 U.S.C. § 928 (1988). The Government elected not to go forward on the greater offense.

**6.** Specification 1 of Charge II reads in pertinent part that the appellant did "on or about 16 January 1992, wrongfully endeavor to impede an investigation by communicating to the said Private First Class [G] a threat 'to physically injure his wife and himself' unless he, the said Private First Class [G], provided false information to Naval Investigative Service Agents during the course of their investigation."

prove the obstruction of justice charge required proving the 16 January threat.

The military judge sentenced the appellant to confinement for 4 years, total forfeitures, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged but suspended confinement in excess of 18 months for 12 months from the date of trial.[7]

After the appellant was found guilty, trial defense counsel moved to have the obstruction of justice charge (Charge II, Specification 1) and the 16 January 1992 threat (Charge II, Specification 2) held multiplicious. It is not clear from the record whether defense counsel was discussing multiplicity for findings or multiplicity for sentencing. Record at 36. The military judge then ruled that

> when the language that is used to attempt to impede an investigation is in and of itself a communication of a threat, that constitutes a separate offense. Therefore, it is not my belief at this time, absent evidence to the contrary, that the specifications should be considered multiplicious. The act of wrongfully endeavoring to impede an investigation has a different societal standard or motivation behind it. It is an attempt to undercut the very structure of society. Whereas the act of communicating a threat to injure someone is a threat against an individual and only peripherally a threat against society.

Record at 36. We agree with the military judge's ruling, albeit for somewhat different reasons, and find that the obstruction of justice offense (Charge I, Specification 1) is not multiplicious for findings, and thus not for sentencing, with the threat offense of 16 January 1992.

## ANALYSIS

In *Teters* the Court of Military Appeals held that, because of the near identity of language contained in Article 79, UCMJ,[8] and Federal Rule of Criminal Procedure 31(c),[9] it was abandoning the "fairly embraced" test for determining lesser-included offenses as a matter of military law. *Teters* at 376. Instead, in light of the U.S. Supreme Court cases of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), a determination of multiplicity would be based on double jeopardy considerations, i.e., Fifth Amendment prohibitions against double jeopardy. *Teters* at 376.

The Double Jeopardy Clause itself simply states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." However, the Supreme Court has interpreted the clause as prohibiting a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). "Obviously, the scope of each of these three protections turns upon the meaning of the words 'same offense,' a phrase deceptively simple in appearance but virtually kaleidoscopic in application." *Whalen v. United States,* 445 U.S. 684, 700, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (Rehnquist, J., dissent-

---

Specification 2 of Charge II reads in part that the appellant did "on or about 16 January 1992, wrongfully communicate to Private First Class [G], a threat to injure the a [sic] aforesaid Private First Class [G] by saying to him 'I'm going to fuck you up.'"

7. The appellant pled guilty pursuant to a pretrial agreement which required the convening authority to suspend confinement in excess of 36 months for a period of 12 months from the date of trial. The suspension of confinement in excess of 18 months was apparently a grant of clemency by the convening authority not required by the pretrial agreement.

8. 10 U.S.C. § 879 (1988). **Conviction of lesser included offense.**

> An accused may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein.

9. Federal Rule of Criminal Procedure 31(c) states:

> (c) **Conviction of Less[er] Offense.** The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

ing). In fact, the Supreme Court has on at least one occasion indicated that the meaning of this phrase may vary depending on the situation such that "two charges considered the same offense so as to preclude prosecution on one charge after an acquittal or conviction on the other need not be considered the same offense so as to bar separate punishments for each charge at a single proceeding." *Id.* (citing *Brown v. Ohio,* 432 U.S. 161, 166–67 n. 6, 97 S.Ct. 2221, 2226 n. 6, 53 L.Ed.2d 187 (1977)).[10] "[T]he decisional law in the area is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz v. United States,* 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981). Today, fortunately, we are concerned only with an evaluation of the third protection, that being protection against multiple punishments for the same conduct. Because the sentence challenged by the appellant was imposed at a single criminal proceeding, this case is best considered using precedents developed in the context of cumulative punishments and not those dealing with successive prosecutions. *See generally Whalen,* 445 U.S. at 699, 100 S.Ct. at 1441.

"[T]he question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." *Id.* at 688, 100 S.Ct. at 1436. (citations omitted). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunt-*

*er,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). "If a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress, it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers in a manner that trenches particularly harshly on individual liberties." *Whalen,* 445 U.S. at 689, 100 S.Ct. at 1436 (footnote omitted). Simply put, the Double Jeopardy Clause prohibits cumulative punishments for several offenses arising out of one incident unless the Congress (or the legislative authority) intended that they be separately punished.

◼ As noted by the Court of Military Appeals in *Teters,* 37 M.J. at 377, the test in the military now for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger:*

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.... "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

*Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182 (quoting *Morey v. Commonwealth,* 108 Mass.

---

10. The U.S. Supreme Court has sometimes disallowed subsequent *prosecutions* where offenses are closely related even when the offenses are not multiplicious for findings. In *In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), the Supreme Court held that a conviction of a Mormon on a charge of cohabiting with his two wives over a 2½ year period barred a subsequent prosecution for adultery with one of them on the day following the end of that period. Strict application of the *Blockburger* test would have permitted imposition of consecutive sentences had the charges been consolidated in a single proceeding. Conviction for adultery required proof that the defendant had sexual intercourse with one woman while married to another; con-

viction for cohabitation required proof that the defendant lived with more than one woman at the same time. In *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), where an acquittal on a charge of robbing one of several participants in a poker game established that the accused was not present at the robbery, the Court held that the principles of collateral estoppel embodied in the Double Jeopardy Clause barred later prosecutions of the accused for robbing the other victims. "[T]he [Supreme] Court in both cases held the separate offenses to be the 'same' for purposes of protecting the accused from having to "'run the gauntlet' a second time." *Brown v. Ohio,* 432 U.S. at 166 n. 6, 97 S.Ct. at 2226 n. 6.

433 (1871)).[11] However, this elements rule enunciated in *Blockburger* is a rule of statutory construction. *Whalen*, 445 U.S. 684, 691, 100 S.Ct. at 1432, 1437. The assumption underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes.

In *American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946), the defendants sought review of their convictions for conspiracy in restraint of trade and conspiracy to monopolize in violation of sections 1 and 2 of the Sherman Anti–Trust Act, contending that separate sentences for these offenses were impermissible because there was "but one conspiracy, namely, a conspiracy to fix prices." 328 U.S. at 788, 66 S.Ct. at 1128. In rejecting this claim, the Court noted the presence of separate statutory offenses and then, relying on *Blockburger*, upheld the sentences on the ground that "§§ 1 and 2 of the Sherman Act require proof of conspiracies which were reciprocally distinguishable from and independent of each other although the objects of the conspiracies may partially overlap." 328 U.S. at 788, 66 S.Ct. at 1129.

> Nor can we accept the proposition that the substantive offenses were merged in the conspiracy.... It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established. A conviction for the conspiracy may be had though the substantive offense was completed. And the plea of double jeopardy is no defense to a conviction for both offenses. It is only an identity of offenses which is fatal.

*Pinkerton v. United States*, 328 U.S. 640, 643–44, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946) (citations omitted).

> Moreover, it is not material that overt acts charged in the conspiracy counts were also charged and proved as substantive offenses. "If the overt act be the offence which was the object of the conspiracy, and is also punished, there is not a double punishment of it." The agreement to do an unlawful act is even then distinct from the doing of the act.

*Id.* at 644, 66 S.Ct. at 1182 (citation omitted).

In *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), the Supreme Court rejected the opportunity to abandon *Blockburger* as the test to apply in determining whether Congress intended to impose multiple punishments for a single act which violates several statutory provisions. In *Gore*, the Court stated that Congress had, through its legislative powers, enacted three distinct provisions in connection with the selling of illicit drugs. The petitioner violated these three independent provisions and was prosecuted and punished for all three as separate wrongdoings, despite the fact the violations occurred in a single transaction of selling drugs. In reaffirming *Blockburger*, the Court explained that "[t]he fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does not make the several different regulatory controls single and identic." 357 U.S. at 389, 78 S.Ct. at 1283.

In the case of *Whalen v. United States*, *supra*, a defendant was convicted of rape and first-degree murder (felony murder) for killing the same victim in the perpetration of the rape and was sentenced to two consecutive terms of imprisonment for the two offenses. The Supreme Court held the consecutive sentences violated the Fifth Amendment guarantee against double jeopardy. In so holding the Court noted that a provision of the Code for the District of Columbia, where the crimes were committed, provided that punishments could not be imposed for two offenses arising out of the same transaction

---

11. The *Blockburger* test is not the only standard for determining whether successive *prosecutions* impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first.
*Brown*, 432 U.S. at 166 n. 6, 97 S.Ct. at 2226 n. 6 (emphasis added).

unless each required "proof of a fact which the other does not." *Id.* 445 U.S. at 693, 100 S.Ct. at 1438. "Under the laws enacted by Congress for the governance of the District of Columbia, rape and killing a human being in the course of any of six *specified* felonies, including rape, are separate statutory offenses." *Id.* at 686, 100 S.Ct. at 1434 (emphasis added). A rape and a killing committed in the course of the rape under the statute were thus not separately punishable, because a conviction for killing in the course of a rape could not be obtained without proving all the elements of rape in all instances. "Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Id.* at 692, 100 S.Ct. at 1438.

In *Albernaz,* the petitioners were involved in a conspiracy, the objectives of which were to import marijuana (a violation of 21 U.S.C. § 963 (1976)) and then to distribute it (a violation of 21 U.S.C. § 846 (1976)). They were charged and convicted under these two separate statutory provisions, each of which authorized a separate punishment, and received consecutive sentences. The petitioners did not dispute that their conspiracy to import and distribute marijuana violated two statutory provisions. Rather, they claimed that it was not clear,

> whether Congress intended to authorize multiple punishment for violation of these two statutes in a case involving only a single agreement or conspiracy, even though that isolated agreement had dual objectives. Petitioners argued that because Congress has not spoken with the clarity required for this Court to find an "unambiguous intent to impose multiple punishment," [a court] should invoke the rule of lenity and hold that the statutory ambiguity on this issue prevents the imposition of multiple punishment. Petitioners further contend that even if cumulative punishment was authorized by Congress, such punishment is barred by the Double Jeopardy Clause of the Fifth Amendment.

450 U.S. at 336, 101 S.Ct. at 1141. In its analysis, the Supreme Court noted that separate offenses with separate penalty provisions, contained in distinct subchapters of the act, were involved and that each dealt with a separate harm. The provisions were unambiguous on their face, and each authorized punishment for a violation of its terms. The Court thus concluded that Congress' intent was clear and that each could be separately punished.

> "[S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent. Thus far, we have utilized that rule only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear.... Legislatures, not courts, prescribe the scope of punishments."

*Missouri v. Hunter,* 459 U.S. at 368, 103 S.Ct. at 679. In allowing consecutive punishments, the Supreme Court held that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause of the Fifth Amendment, even if the single transaction is a conspiracy, so long as the intent of the legislature is clear. Here, the Court found that the two statutory provisions involved different aims, that the legislative intent to allow separate punishments was clear, and that both clearly satisfied the *Blockburger* test.

In *Albernaz* the Court concluded that the intent of Congress to punish as separate offenses was reinforced by the fact that the two conspiracy statutes were directed to separate evils presented by drug trafficking. " 'Importation' and 'distribution' of marihuana impose diverse societal harms, and ... Congress has in effect determined that a conspiracy to import drugs and to distribute them is twice as serious as a conspiracy to do either object singly." 450 U.S. at 343, 101 S.Ct. at 1144.

From these decisions we conclude that the *Blockburger* test, as further interpreted in

*Schmuck,* is alive and well in the area of cumulative punishment. Further, *Albernaz* indicates cumulative punishment may be imposed even if *Blockburger* is not met, provided congressional intent to impose such cumulative punishment is clear.

### DECISION

■ Turning to the facts of the case before us, we note that communicating a threat and obstruction of justice each contains an element of proof that the other does not. The elements of communicating a threat under Article 134, UCMJ are:

(1) That the accused communicated certain language expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently, or in the future;

(2) That the communication was made known to that person or to a third person;

(3) That the communication was wrongful; and

(4) that, under the circumstances, the conduct of the accused was to the prejudice of good order. and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MCM, Part IV, ¶ 110b. The elements of obstructing justice, on the other hand, are:

(1) That the accused wrongfully did a certain act;

(2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

(3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and

(4) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MCM, Part IV, ¶ 96b. As the Government notes in its pleadings both communicating a threat and obstructing justice are listed in the MCM as offenses under Article 134, UCMJ, and that there are only two *statutory* elements of Article 134 offenses: (1) the ac-

cused did or failed to do a certain act; and (2) the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. MCM, Part IV, ¶ 60(b). However, we agree with the Government that the "elements" approach under Article 134 should be applied to the elements of the offense as recognized and prescribed by the President in the Manual for Courts–Martial. *See generally United States v. Wheeler,* 40 M.J. 242, 246–47 (C.M.A.1994); *United States v. Foster,* 40 M.J. 140 (C.M.A.1994); *United States v. Schoolfield,* 40 M.J. 132 (C.M.A.1994); *United States v. Guerrero,* 28 M.J. 223, 226–27 (C.M.A.1989); *United States v. Herron,* 39 M.J. 860, 864 (N.M.C.M.R.1994) (Mollison, S.J. concurring).

The Government, in its pleadings, likewise contends that the appellant's case is unlike that presented in *Whalen* where the felony murder statute incorporated six specific felonies into the language of the statute. 445 U.S. at 695, 100 S.Ct. at 1439. We agree. In the case before us, no specific offenses are necessary to be proved in order to establish obstruction of justice. The elements of an obstruction of justice offense clearly do not include or incorporate any reference to the communication of a threat. If the President intended to incorporate certain predicate offenses into the elements of obstruction of justice, we believe he would have caused them to be listed. *See, e.g.,* MCM, Part IV, ¶¶ 54b (different types of assaults specifically delineated) and 54e (maximum punishment for each type of assault specifically set out).

As the Court of Military Appeals noted in *Teters,* one does not use the "pleadings-and-proof 'means' test," in determining multiplicity. 37 M.J. at 378. Rather one looks at the "elements of the statutes violated and not to the pleadings or proof of these offenses." *Id.* at 377 (citing *United States v. Dixon,* —— U.S. ——, ——, 113 S.Ct. 2849, 2851, 125 L.Ed.2d 556 (1993)).

■ Obstruction of justice does not require proof of an individual communicating a present intent to injure and, in certain situations, may not require proof of any underly-

ing offense. Communication of a threat does not contain as an element an intent to "influence, impede, or otherwise obstruct the due administration of justice" which is required to establish an obstruction of justice offense. Since each offense requires proof of a different element, the *Blockburger* test is met. *See also United States v. Gill,* 40 M.J. 835 (A.F.C.M.R.1994)

▇ There is, however, one last step to determine whether offenses are constitutionally separate, and that is "whether there are any other indications of contrary intent on Congress' part which can overcome the *Blockburger* presumption of separateness." *Teters,* 37 M.J. at 378. Article 79, UCMJ, speaks of lesser included offenses as "offenses *necessarily* included in the offense *charged.*" [12] 10 U.S.C. § 879 (1988) (emphasis added). To us, "one offense is not 'necessarily included' in another unless the *elements* of the lesser offense *are a subset* of the *elements* of the charged offense." *United States v. Foster,* 40 M.J. 140, 142 (C.M.A. 1994) (quoting *Schmuck* 489 U.S. at 716, 109 S.Ct. at 1450). Thus, *necessarily* included, means whenever the greater offense is charged, a lesser included offense will always be present, irrespective of how the greater offense is pled. In comparing greater and lesser offenses, we look only to the statutory or generic elements of the offense charged.

Additionally, we believe that there is yet another method in determining the legislative intent regarding the offenses before us. In the absence of specific requirements set out in the Code, Article 36(a), UCMJ, delegates to the President the authority to prescribe "[p]retrial, trial, and post-trial procedures, including modes of proof" in courts-martial and "so far as ... practicable, [to] apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts," so long as not "inconsistent" with the Code. 10 U.S.C. § 836(a) (1988). The President lists two lesser included offenses to a charge of communicating a threat: provoking speeches or gestures under Article 117, UCMJ, 10 U.S.C. § 917, and attempts under Article 80, UCMJ, 10 U.S.C. § 880. *See* MCM, Part IV, ¶ 110d. However, the President, under obstruction of justice, simply states as lesser included offenses: "None." MCM, Part IV, ¶ 96d. The list of lesser included offenses may not be all inclusive. MCM, Part IV, ¶ 2(b)(4). Nonetheless, as the promulgator of the Article 134 offenses under the Code, the President has clearly expressed his intent that there are no offenses necessarily included within an obstruction of justice charge.

In Article 56, UCMJ, 10 U.S.C. § 856 (1988), the Congress delegated to the President the authority to prescribe the limits of court-martial punishment. We also note that as to multiplicity the Manual provides that "[w]hen the accused is found guilty of two or more offenses, the maximum authorized punishment may be imposed for each separate offense.... [O]ffenses are not separate if each does not require proof of an element not required to prove the other." R.C.M. 1003(c)(1)(C).

Finally, we note that the offenses of making a threat and obstructing justice each address a separate evil or societal harm. *See Albernaz,* 450 U.S. at 343, 101 S.Ct. at 1144. Obstruction of justice is concerned with the protection of the administration of justice in the military. *United States v. Long,* 2 C.M.A. 60, 65, 6 C.M.R. 60, 65 (1952). The prohibition against threats is geared to protecting the physical and mental well-being of individuals. Thus, based on the *Blockburger* test, the Congressional intent found in Article 79, UCMJ, and the Presidential intent as expressed in the Manual, we conclude that communication of a threat and obstruction of justice are not multiplicious for findings, even in a particular case, as here, where the threat

---

**12.** We note that Article 79, UCMJ, refers to the offense "charged" and not to a "pleading" or "specification" the latter two terms which might be considered synonymous. We believe such usage was intentional. The Manual for Courts-Martial indicates that "[a] charge states *the article* of the code, law of war, or local penal law of an occupied territory which the accused is alleged to have violated." R.C.M. 307(c)(2). A specification, or pleading, however, is simply "a plain, concise, and definite statement of the essential facts constituting the offense charged." R.C.M. 307(c)(3).

factually must be proved in order to prove the obstruction of justice.

## MULTIPLICITY FOR SENTENCING

The nature of a multiplicity for findings determination drives the determination of whether two offenses are separately punishable. If the offenses are separate for findings, then they are separate for punishment for the *raison d'etre* for a multiplicity analysis is to determine whether an accused may be punished separately for several offenses arising out of the same misconduct. " 'A single act may be an offense against two statutes; and if each statute requires proof of an additional [element] which the other does not, an acquittal or conviction under each statute does not exempt the defendant from the prosecution *and punishment* under the other.' " *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182 (citing with approval *Morey v. Commonwealth*, 108 Mass. 433) (emphasis added).

## RETROACTIVITY

The Court of Military Appeals applied its new view of multiplicity retroactively to the accused in *Teters*. Moreover, subsequent appellate cases indicate that for questions of cumulative punishments under the double jeopardy analysis, *Teters* will be applied retroactively. *See United States v. Barnes*, 38 M.J. 72, 73 (C.M.A.1993); *United States v. Albrecht*, 38 M.J. 627, 629 (A.F.C.M.R.1993). We will follow the same rule. *Accord Griffith v. Kentucky*, 479 U.S. 314, 327, 107 S.Ct. 708, 715, 93 L.Ed.2d 649 (1987).

## CAVEAT

■ From the above discussion it is clear that a single act may result in an accused being charged, convicted, and punished for several different violations of the UCMJ. Congressional and presidential intent remains paramount in determining whether an accused may be punished for more than one offense resulting from a single act or incident. Nevertheless, it should be clear that "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one

person." R.C.M. 307(c)(4) discussion. As Judge Cox noted so well in *Foster:*

There is another elementary concept of justice which none of us should forget, when one act of an accused violates several penal statutes. It is that there is prosecutorial discretion to charge the accused for the offense(s) which most accurately describe the misconduct and most appropriately punish the transgression(s). *United States v. Teters* notwithstanding, military judges must still exercise sound judgment to ensure that imaginative prosecutors do not needlessly "pile on" charges against a military accused. A fair result remains not only the objective, but indeed the justification of the military justice system.

40 M.J. at 144 n. 4 (citations omitted). In the case before us, we determine that there has been no such undue multiplication.

## OTHER ISSUES IN THE CASE

**Assignment of Error I:** SUFFICIENCY OF EVIDENCE OF GUILT CONCERNING OBSTRUCTION OF JUSTICE AND WRONGFUL COMMUNICATION OF THREATS.

■ Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), a Court of Criminal Appeals has the duty of determining not only the legal sufficiency of the evidence but also its factual sufficiency. The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325.

Private First Class G provided the testimony supporting the appellant's conviction of obstructing justice and communicating threats. Record at 17–25. Clearly, if that testimony was truthful, there is no real issue

concerning the appellant's guilt. At trial and in his brief to this Court, the appellant attacks the credibility of PFC G by showing that PFC G made statements prior to trial that contradicted his testimony (e.g., he initially lied to investigators by telling them the appellant only hit the victim, Lance Corporal B, with the pipe after a scuffle between the victim and the appellant, and he told LCpl S that the incident occurred just as the appellant earlier described it). Additionally, the appellant emphasizes certain inconsistencies between the testimony of PFC G and the victim concerning what was done with the victim's wallet after he was hit on the head with the pipe.

Based on our evaluation of the entire record, we are convinced that PFC G testified truthfully at trial. Thus, applying the legal standards of review stated above, we are convinced beyond a reasonable doubt that the appellant committed the offenses alleged in Charge II and Charge III (obstruction of justice and communication of threats). The first assignment of error is without merit.

### *Assignment of Error III:* TRIAL COUNSEL'S ARGUMENT ON FINDINGS.

The appellant did not testify on the merits to Charges II and III. During closing argument, after stressing the importance of PFC G's testimony, the trial counsel stated:

> We believe we have proved that beyond a reasonable doubt that the only people that were there and able to prove the threats is in fact the witness that was brought in which is PFC [G]. There is no one else who could come in and prove the case. They were the only two that were there when the language was communicated. The accused pleaded not guilty and we believe that PFC [G] has shown to the Court beyond a reasonable doubt that he was threatened....

Record at 33–34.

In evaluating the appellant's claim that the trial counsel's argument requires disapproval of the findings of guilty, we ask two key questions: (a) Did the appellant waive—or forfeit—his right to complain about the comment? (b) Was "plain error" committed?

As emphasized recently in *United States v. Causey,* 37 M.J. 308, 311 (C.M.A. 1993), a defense counsel normally has the responsibility to object to improper argument so that appropriate action may be taken by the military judge. *See* R.C.M. 919(c). The rule is designed, in part, to prevent defense counsel from remaining silent, making no objection, and then raising the issue on appeal for the first time, long after any possibility of curing the problem has vanished. Such a rule encourages "all trial participants to seek a fair and accurate trial the first time around." *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). Additionally, the failure of a defense counsel to object supports the inference that any error committed at the time was deemed "to be of little consequence." *United States v. Grandy,* 11 M.J. 270, 275 (C.M.A.1981).

The "plain error doctrine" is normally invoked only to rectify those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Causey,* 37 M.J. at 311 (quoting *United States v. Fisher,* 21 M.J. 327, 328 (C.M.A.1986)). It is only "to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *Id.* (quoting *United States v. Frady,* 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14); *cf. United States v. Olano,* —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

A comment on an accused's failure to testify is error. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). A comment that evidence is uncontradicted has been held improper where the evidence is a conversation between two people, the witness and an accused who did not testify at trial. *United States v. Cazenave,* 28 C.M.R. 536, 543 (A.B.R.1959). To require reversal, the comment must be naturally and necessarily taken by the court as a comment on the failure of the accused to testify. *United States v. Gordon,* 14 C.M.A. 314, 34 C.M.R. 94 (1963); *see also United States v. James,* 24 M.J. 894, 896 (A.C.M.R.1987).

We have carefully evaluated the argument of the trial counsel, noting its wording, its relationship to the evidence pre-

sented, the lack of objection by the defense counsel to the argument, and the fact that the experienced military judge was, apparently, not moved to comment on the record concerning the argument. These factors lead us to three conclusions. First, we cannot conclude that the comment must have been naturally and necessarily taken by the judge as a comment on the failure of the accused to testify. Second, under the circumstances, the defense counsel's failure to object constituted waiver of any possible objection to the argument, or, alternatively, a forfeiture of the right to complain before this Court. Third, if there was error committed, it was not "plain error" requiring reversal of the appellant's conviction. Thus, the third assignment of error is without merit.

### Assignment of Error IV: THE APPELLANT'S ATTACK ON THE PROVIDENCE INQUIRY.

 Normally, an appellant's claim of error concerning findings based on guilty pleas states that (1) something is omitted in the guilty plea inquiry, such as an advisement or a particular question, and/or (2) the appellant stated a matter or matters legally or factually inconsistent with the plea of guilty, or otherwise introduced evidence inconsistent with a plea of guilty. If the claim falls into the first category, we will examine the entire record to ascertain whether the appellant was adequately advised and whether his admissions reasonably support the conclusion that the plea is factually accurate. If it falls into the second category, we will examine the entire record to determine whether there is a reasonable ground for finding an inconsistency between the plea and the appellant's statements. We will not reverse findings based on a mere possibility of a conflict. At the bottom line, the rejection of a plea requires that the record of trial show a substantial basis in law and fact for questioning the guilty plea. See United States v. Vega, 39 M.J. 79 (C.M.A.1994); United States v. Irons, 34 M.J. 807 (N.M.C.M.R.1992); R.C.M. 910(h).

 During the providence inquiry, the military judge asked the appellant six questions about his intention and received affir-

mative responses to each question. ("Did you intend to hit him at the time?" "Did you intend to hit him with the pipe?" "Did you intend to hit him hard?" "Did you intend to cause bodily harm to him?" Then—after a four line definition of grievous bodily harm— "[d]id you intend to inflict that type of bodily harm upon [LCpl B] at the time?" "Did you intend to inflict, perhaps, a deep cut upon his head?") Record at 10.

The appellant now contends that the military judge was obligated to explain to the appellant the defense of voluntary intoxication because of references in the record to the fact that the appellant had been drinking alcoholic beverages before he hit his victim with a pipe (e.g., the appellant's unsworn statement includes a comment that he believed the incident would not have occurred but for the alcohol he had consumed, and other witnesses testified that the appellant had made statements to them indicating that he had hit the victim because he was not sober). See Record at 18, 30, 44, 57, 64. First, in evaluating this contention, we observe that when the appellant was placed under oath and quizzed at length by the military judge concerning his intention when he swung the pipe at the victim's head, he steadfastly maintained that he had the specific intent to inflict grievous bodily harm. Second, we note that the other references in the record to the appellant's consumption of alcohol on the night of his assault on the victim are attributed to witnesses who were exposed to the appellant's post-trial rationalizations for his actions (e.g., the appellant's platoon sergeant testified that the appellant told him that he "was real intoxicated when he did it.... That he wouldn't do it if he were sober." Record at 57).

Based on the appellant's unequivocal statements during the providence inquiry concerning his intention, and the circumstances surrounding his statements concerning his consumption of alcohol, we conclude that the military judge had no obligation to reopen the providence inquiry and specifically explain the defense of voluntary intoxication. Indeed, in our opinion, the appellant's statements were quintessential statements of a rationalization made to minimize his culpabil-

ity. *See United States v. Penister,* 25 M.J. 148, 153 (C.M.A.1987) (Cox, J., concurring). Thus, the fourth assignment of error is without merit.

## CONCLUSION

We thus conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge ORR and Judges KEATING, McLAUGHLIN and DeCICCO concur.

Judge CLARK did not participate.

LARSON, Chief Judge (concurring in part/dissenting in part):

I find that, under the facts of this case, the offense alleged in Specification 2 of Charge II (communicating a threat) is a lesser-included-offense (LIO) of that alleged in Specification 1 of Charge II (obstruction of justice), and therefore, multiplicious for all purposes. Accordingly, I dissent from the majority's affirmance of the finding of guilty to Specification 2 of Charge II. I concur in affirming the remaining findings of guilty and the sentence.

Although the law of multiplicity has been in a state of turmoil in recent years, one feature has remained constant: if an offense is a lesser-included-offense (LIO) of another, it is multiplicious for any purpose. *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *United States v. Foster,* 40 M.J. 140 (C.M.A.1994); *United States v. Teters,* 37 M.J. 370 (C.M.A.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994). Rule for Courts–Martial (R.C.M.) 907(b)(3)(B) discussion; R.C.M. 1003(c)(1)(C). Therefore, if communicating a threat is an LIO of obstructing justice under the facts of this case, it is multiplicious and must be dismissed.

I agree with the majority that the answer to the LIO/multiplicity question is found by applying the "elements" test set down by the Supreme Court in *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) and applied to military law by the Court of Military Appeals in *United States v. Foster,* 40 M.J. 140 (C.M.A.1994). In those cases, the Courts stated that, under the elements test, an offense is an LIO of another offense when the elements of the lesser are a subset of the elements of the charged offense. *Schmuck,* 489 U.S. 705, 716, 109 S.Ct. 1443, 1450; *Foster,* 40 M.J. 140, 143. To determine whether one is a subset of the other, first determine whether proof of the lesser is *necessary* in order to prove the greater. *Id.*

In the first paragraph of the majority opinion, Senior Judge Reed concluded that proof of the offense of communicating a threat was *necessary* in order to prove the offense of obstruction of justice. In effect, he applied the very test set down in *Schmuck* and *Foster* to the facts of this case. In so doing, he necessarily considered the language in the specifications in determining what the elements of these two offenses were; *for only by tailoring the elements to the facts alleged in the specifications could one determine that the prosecution would have to prove that the appellant communicated a threat in order to prove that he obstructed justice.* Yet, after applying the test in this particularized manner, the majority then rejected the test results in favor of a comparison of the generic elements of these two offenses without reference to the language in the specifications.

This comparison of only the generic elements as listed in statutes or in the Manual for Courts–Martial, United States, 1984 (MCM) is useful to determine the intent of the Congress and the President as to whether multiple punishments are authorized for similar offenses that are not LIOs. Indeed, it appears to be mandated by our superior court in *Teters,* 37 M.J. at 377 ("It is now unquestionably established that this test is to be applied to the elements of the statutes violated and not to the pleadings or proof of these offenses"). However, *Teters* involved the comparison of two separate offenses (larceny and forgery) that were based upon the same conduct, not one as an LIO of the other. My reading of the subsequent case of *Foster,* which dealt with the question of

whether one offense was an LIO of another, tells me that one cannot realistically compare the elements of the two without referring to the pleadings. In *Foster,* the Court concluded that, since the accused was *charged* with committing sodomy *by force and without the consent* of the victim, the offense of indecent assault, which requires that the assault be without the victim's consent to establish guilt, was a proper LIO.[1] 40 M.J. 140, 147.

Similarly, in another recent case, our superior Court found indecent acts and adultery to be separate offenses under the *Blockburger/Teters* elements test by comparing the elements *as tailored to the facts of the case. United States v. Wheeler,* 40 M.J. 242 (C.M.A.1994). Specifically, the Court found that the element of indecency in indecent acts was proved by the fact that the person with whom the appellant had sexual intercourse was his step-daughter, a fact not necessary to prove in the adultery offense. Only by referring to the pleadings could the Court have analyzed the difference between the elements of these two offenses in this manner. Although *Wheeler* concerns offenses that were not in a greater/lesser relationship to one another, nevertheless it offers insight into the shortcomings of the generic elements comparison approach to the multiplicity question in general.

I also find support for the use of pleadings to determine whether one offense is an LIO of another for multiplicity purposes in *United States v. Dixon,* ── U.S. ──, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).[2] In that case, the Supreme Court, in a 5–4 decision, restored the elements test of *Blockburger v. United States,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. 306 (1932) for determining whether offenses are separate for multiple prosecution or multiple punishment purposes. The majority's application of the elements test is quite revealing. Justice Scalia, writing for the majority, found the defendant's conviction for simple assault of his wife to be multiplicious (and therefore barred by the Double Jeopardy Clause) with his prior conviction for contempt for violating a court's civil protection order (CPO) order not to assault his wife. He reached that conclusion because proof of each element of the assault was required to prove the violation of the CPO. He could only have come to that conclusion—that the assault elements were a subset of the contempt elements—by considering the pleadings, specifically the terms of the CPO.[3] As Chief Justice Rehnquist pointed out in dissent, a strict comparison of the generic statutory elements of the two offenses, under *Blockburger,* reveals that each contains an element not found in the other and, therefore, multiple prosecution should not be barred. ── U.S. ──, 113 S.Ct. 2849, 2865.[4]

Another feature of applying the simplistic generic elements test to the LIO question causes me concern. We already have a body of law to determine whether one offense is an LIO of another for purposes other than multiplicity—such as whether an accused may be found guilty of an LIO if proof of the charged offense is insufficient or whether a guilty finding of an LIO may be substituted by reviewing authorities for the same reason. *United States v. Emmons,* 31 M.J. 108 (C.M.A.1990); *United States v. McKinley,* 27

---

1. It is true that the issue in *Foster* was whether Foster could be convicted of indecent assault as an LIO in lieu of sodomy and not, as in this case, whether the two were multiplicious for findings or sentence. Nevertheless, even though the purpose of LIO determination is different in this case, the ultimate question—whether the lesser offense is an LIO—is the same.

2. As an aside, *Dixon,* put to rest another basis for finding offenses separate or the same, i.e., whether they serve different or identical societal interests. ── U.S. ──, ──, 113 S.Ct. 2849, 2858. I mention this only because the majority opinion refers to the different societal interests served by the two offenses in this case as another reason for considering them separate. The military judge also espoused this reason for his ruling at trial.

3. By comparison, the Court found that a subsequent conviction for assault with intent to kill was not multiplicious because that offense contained an element, i.e., intent to kill, not found in the order that formed the basis of the contempt offense. ── U.S. ──, 113 S.Ct. 2858.

4. At least one state supreme court has interpreted *Dixon* in this manner, i.e., to consider the charging instrument when applying the "elements" test. *Parrish v. Texas,* 869 S.W.2d 352 (Texas Crim.App.1994).

M.J. 78 (C.M.A.1988). Furthermore, guidance in determining whether one offense is an LIO of another can be found in the MCM, Part IV, beginning with paragraph 2. There, the President, in interpreting Article 79, UCMJ, 10 U.S.C. § 879 (1988), has emphasized that one offense cannot be considered necessarily included within the charged offense unless the specification contains sufficient language to put the accused on notice that he must prepare to defend against the lesser offense as well. Obviously, inherent in this assessment is a detailed examination of the specification itself. Simply comparing generic elements would not necessarily disclose the existence of an LIO for notice purposes.

It is revealing as well that the President has listed possible LIOs in the discussion of each offense in the MCM, Part IV, some of which would not be LIOs under the strict generic elements comparison test. For example, assault with a dangerous weapon is listed as an LIO of intentional infliction of grievous bodily harm. MCM, Part IV, ¶ 54d(7). However, a strict comparison of the generic elements of these two offenses reveals that assault with a dangerous weapon contains an element not found in intentional infliction of grievous bodily harm, i.e., that the accused used a dangerous weapon. MCM, Part IV, ¶ 54b(4)(a) and (b). Therefore, under the elements test, it would not be an LIO despite its designation as such in the Manual and, as a result, an accused could be punished twice for using a dangerous weapon to intentionally inflict grievous bodily harm. My conclusion from this observation is that whether an offense that is listed as an LIO is, in fact, an LIO in a given case will depend on the language in the specification. In the assault example, if the specification alleging intentional infliction of grievous bodily harm contains an allegation that the accused used a dangerous weapon in the assault, then assault with a dangerous weapon would be an LIO; otherwise, it would not.

The observation that a listed LIO may not always be an included offense leads to the conclusion that the listing is intended to be helpful guidance, not a mandatory bright line. In effect, the President has recognized that whether an offense is an LIO will depend on the language contained in the charged offense. This conclusion is borne out by the words in the MCM, Part IV, ¶ 2b(4) that the lists are not intended to be all-inclusive.[5] *See also, United States v. Standifer,* 40 M.J. 440 (C.M.A.1994) (Court relies on language that lists of LIOs "are not all-inclusive," in finding obstruction of justice included within subordination of perjury even though not listed as an LIO in the MCM). Consequently, I see little significance in the fact that the MCM lists "none" under the LIO part of its discussion of the offense of obstruction of justice. MCM, Part IV, ¶ 96d. Clearly, there are no common ones—such as assault as a routine LIO under robbery—but that observation does not preclude the existence of one if an application of the elements, tailored to the language in the specification, establishes that proof of a lesser offense is necessary to prove the charged offense.

I recognize that, in addition to the elements test, the majority has included the presence of an offense as an LIO in the MCM as an alternative means to identify it as such. Yet, while this alternative may seem to cover all the bases, I see it as inconsistent with the logic of the generic elements test. The essence of that test is that it is accomplished without reference to the language of the specification. Yet, as discussed above, one cannot determine whether an offense, which is listed as an LIO in the MCM, is in fact an LIO in a given case without examining the language in the specification. Furthermore, one cannot determine whether an accused is on notice that he must defend against an LIO as well as the charged offense without examining the specification. I have difficulty using different and conflicting tests to determine whether the same offense in the same case is an LIO. Using the pleadings to find an LIO in order to preserve a conviction on appeal but using the generic elements test in the same case to find that the offense is not an LIO in order

---

5. These words may simply be a recognition of the limitations of the President's power to prescribe the ambit of a substantive crime. As the Court of

Military Appeals noted recently, this function is uniquely within the province of the courts. *United States v. Anzalone,* 41 M.J. 142 (C.M.A.1994).

to subject the accused to multiple punishment is confusing and illogical. An LIO should be an LIO for all purposes.[6]

I share the desire—found in many appellate opinions of recent vintage—to find a simple answer to the LIO/multiplicity question. The strict generic elements test for determining whether one offense is included within another would certainly provide that simple answer. The majority opinion makes an excellent argument for that position. Its only flaw is that it won't work, at least not in this case. Because of the way the specifications were drafted, this particular case is unique to its facts. For that reason, it is not the right case in which to search for that elusive simple answer to this complex problem. Our duty here is to apply the law, confusing as it may be, to the unique facts of this case as best we can. In so doing, I find communicating a threat included within obstruction of justice and, accordingly, I would set aside the finding of guilty to the lesser offense and order it dismissed.

Senior Judge WELCH concurs.

MOLLISON, Senior Judge (concurring in part/dissenting in part):

After having weighed the evidence in the record of trial[1] and making allowances for not having personally observed the witnesses, I am not convinced beyond a reasonable doubt of the appellant's guilt of Charges II and III, obstruction of justice and communicating threats. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987).

The findings of guilty of these charges rest solely upon the testimony of PFC Glezman, who was in the appellant's company on 16 January 1992 at the time the appellant assaulted LCpl Bennett by striking him on the back of the head with a pipe. Glezman provided two sworn pretrial statements to the

Naval Criminal Investigative Service (NCIS). The first was provided on 27 January 1992. In it, Glezman explained that the event was one of mutual combat between Bennett and the appellant and that Bennett initiated the affray by throwing the first punch. Glezman denied in his statement the fact that moments before the fight Bennett had loaned Glezman and the appellant $10.00 and received Glezman's driver's license as collateral. Glezman also denied seeing Bennett's wallet. He further stated that he had previously thrown his driver's license away. In his second statement, given to NCIS on 6 February 1992, Glezman stated that the appellant assaulted Bennett without provocation and grabbed Bennett's wallet. In his second statement, however, Glezman apparently did not admit complicity. At trial, Glezman admitted his first sworn statement was a lie. He further admitted that indeed Bennett had loaned him and the appellant $10.00 in exchange for Glezman's driver's license and that he, Glezman, had also lied to explain the license's disappearance. His explanation for his change in stories—the appellant threatened him—is the sole basis for the conviction of Charges II and III. At trial, Glezman's description of the events was, however, at odds with the testimony of the victim, Bennett. Bennett testified that after he was struck, he held out his open wallet, surmising that the appellant and Glezman intended to rob him; that Glezman approached him and "smacked" the wallet out of his hands; that the contents of the wallet spilled on the street; that Glezman and the appellant picked up the contents of the wallet; and, that he, Bennett, departed. At trial Glezman denied slapping Bennett's wallet out of his hands. It is fair to infer that Glezman's driver's license was an item in Bennett's wallet and was not left behind as evidence. Under the circumstances, it appears

---

**6.** It must be emphasized that just because an offense is an LIO according to the language in the specification does not automatically entitle either party to have the question of guilt of the lesser offense submitted to the fact-finder by instruction, nor does it automatically make a finding of guilty to the lesser offense available to reviewing authorities as a substitute for the charged offense. In order to suit those purposes, there must evidence of each element of the lesser

offense admitted at trial upon which the factfinders could rationally find the accused guilty of the lesser offense. *Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

**1.** The record for these purposes is the evidence adduced on the merits, only. *United States v. Hill,* 39 M.J. 712 (N.M.C.M.R.1993) (citing cases).

equally probable that the change of stories by Glezman was motivated as much by his desire somehow to cover his own complicity in the mugging as it was by his uncorroborated claim that the appellant threatened him. Accordingly, I cannot join in affirming the conviction as to these offenses.

Although I cannot join in affirming Charges II and III, which are the predicate for the majority's discussion of multiplicity issues, I concur entirely in its disposition of those issues. In all other respects, I also concur in the majority's disposition of appellant's case.