**UNITED STATES, Appellee**

v.

**Thomas W. WHEELER, Sergeant**
**U.S. Army, Appellant.**

No. 93–0705.
CMR No. 9200553.

U.S. Court of Military Appeals.

Argued April 5, 1994.

Decided Sept. 15, 1994.

For Appellant: *Captain Christopher W. Royer* (argued); *Colonel Stephen D. Smith, Lieutenant Colonel James H. Weise, Major Fran W. Walterhouse, Captain Beth G. Pacella* (on brief); *Major Michael A. Egan.*

For Appellee: *Captain John G. Giovannelli* (argued); *Colonel Dayton M. Cramer, Major James L. Pohl, Major Joseph C. Swetnam* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

On February 20 and March 16–17, 1992, appellant was tried by a military judge alone sitting as a general court-martial at the United States Army Aviation Center, Fort Rucker, Alabama. Contrary to his pleas, appellant was convicted of the following:

| Charge | Findings | Place | |
|---|---|---|---|
| **Chg. II** | | | |
| 1. Sep '89 to Jun '91 | Apr 19 to May 19, '91 | Enterprise, AL | Adultery with step-daughter, woman not his wife. |
| 2. Sep 18, '88 to Jun 13, '91 | Apr 19 to May 19, '91 | Enterprise, AL | Indecent acts to step-daughter by having sexual intercourse. |
| **Add Chg I** | | | |
| Nov 1 to Dec 9, '91 | Dec 6, '91 | Ft. Rucker, AL | Disobedience of order of no contact. |
| **Add Chg II** | | | |
| 1. Sep 18, '88 to Jun 13, '91 | On or about Sep or Aug '89 | Ft. Rucker, AL | Sexual intercourse with step-daughter. |
| 2. Sep 18, '88 to Jun 13, '91 | Apr 19 to May 19, '91 | Enterprise, AL | Disorder. |

These offenses were in violation of Articles 90 and 134, Uniform Code of Military Justice, 10 USC §§ 890 and 934, respectively. The judge sentenced appellant to a dishonorable discharge, 4 years' confinement, and reduction to E1. The convening authority approved only so much of the sentence as provides for 18 months' confinement, reduction to E1, and a dishonorable discharge.

We granted review of the following issues:

I

WHETHER THE MILITARY JUDGE ERRED TO APPELLANT'S PREJUDICE WHEN HE DENIED THE DEFENSE MOTION TO FIND ADULTERY AND INDECENT ACTS (THE SPECIFICATIONS OF CHARGE II) MULTIPLICIOUS FOR FINDINGS.

II (Specified)

WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED THE DEFENSE MOTION TO FIND THE SPECIFICATIONS OF ADDITIONAL CHARGE II [INCEST] MULTIPLICIOUS WITH THE SPECIFICATIONS OF CHARGE II [ADULTERY AND INDECENT ACTS].

STATEMENT OF FACTS

Between August 29, 1986, and June 13, 1991, appellant was married to Diana L. (Wheeler) Loucks. Prior to his permanent separation from Diana in August 1990, appellant sporadically moved back and forth between Diana and his family home and the barracks. Appellant had several stepchildren in this marriage, including his stepdaughter, C, who was born on September 28, 1972.

C testified that she and appellant had sex in his barracks room at Fort Rucker, Alabama, in the fall of 1989, a sexual act which resulted in the conception of a child. The child was born on June 18, 1990. This sexual act resulted in appellant's conviction under 18 USC § 13, assimilating the Alabama Criminal Code, § 13A–13–3 (incest), as set forth in specification 1 of Additional Charge II.

C moved out of her mother's home on April 19, 1991. Shortly before that date, appellant approached one of his subordinates, Specialist (SPC) James McKenzie, and asked whether C could move into a spare bedroom of SPC and Mrs. McKenzie's trailer, located at the Holiday Village Trailer Park in Enterprise, Alabama. SPC McKenzie agreed, and C stayed there for a month, beginning on April 19, 1991. Appellant moved into the same bedroom the day after C moved in and left the day before C left. Appellant provided a king-size bed for the bedroom. Based upon appellant's behavior with C, which in-

cluded kissing on the lips, a first-name relationship, and sitting with his arm around her, SPC McKenzie believed C was appellant's girlfriend, not his stepdaughter.

C testified that she and appellant had sex on two additional occasions at the McKenzies' trailer in late April and early May 1991. C later gave birth to appellant's second child on January 10, 1992.

## DISCUSSION

This is a case in which appellant asserts that the Government stacked the charges against him to inflate the gravamen of his conduct and escalate his punishment. The Government, on the other hand, argues that these are separate crimes under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

### Code

The Uniform Code of Military Justice provides no express rules for determining multiplicity of charges, findings or sentences. In the absence of a Codal standard, Article 36(a), UCMJ, 10 USC § 836(a), delegates to the President the authority to prescribe "[p]retrial, trial, and post-trial procedures, including modes of proof" in courts-martial and "so far as ... practicable, [to] apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts," so long as not "inconsistent" with the Code. Article 56, UCMJ, 10 USC § 856, delegates to the President the authority to prescribe the limits of court-martial punishment.

### Manual

The Manual for Courts–Martial, United States, 1984, has set forth multiplicity rules as to charging, findings, and sentence. As to charging, the Manual notes that, absent exigencies-of-proof problems, "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." RCM 307(c)(4), Discussion. This language is the same as that in paragraph 26*b*, Manual for Courts–Martial, United States, 1969 (Revised edition), except the 1969 Manual was followed by a series of examples.

This precatory language was clarified in RCM 907(b)(3)(B) and its Discussion:

(3) *Permissible grounds.* A specification may be dismissed upon timely motion by the accused if:

\* \* \*

(B) The specification is multiplicious with another specification, is unnecessary to enable the prosecution to meet the exigencies of proof through trial, review, and appellate action, and should be dismissed in the interest of justice.

### Discussion

A specification is multiplicious with another if it alleges the *same offense,* or an offense necessarily included in the other. A specification may also be multiplicious with another if they describe substantially the same misconduct in two different ways. For example, assault and disorderly conduct may be multiplicious if the disorderly conduct consists sole[l]y of the assault. *See also* RCM 1003(c)(1)(C).

*Ordinarily,* a specification should not be dismissed for multiplicity before trial unless it clearly alleges the same *offense,* or one necessarily included therein, as is alleged in another specification. It may be appropriate to dismiss the less serious of any multiplicious specifications after findings have been reached. Due consideration must be given, however, to possible post-trial or appellate action with regard to the remaining specification.

(Emphasis added.)

For sentencing RCM 1003(c)(1)(C) provides:

*Multiplicity.* When the accused is found guilty of two or more offenses, the maximum authorized punishment may be imposed for *each separate offense.* Except as provided in paragraph 5 of Part IV, offenses are not separate if each does not require proof of an element not required to prove the other. If the offenses are not separate, the maximum punishment for those offenses shall be the maximum au-

thorized punishment for the offense carrying the greatest maximum punishment.

(Emphasis added.)

The Discussion of this Rule makes clear that this Rule is not dispositive:

The basis of the concept of multiplicity in sentencing is that an accused may not be punished twice for what is, in effect, *one offense.* Offenses arising out of the same act or transaction may be multiplicious for sentencing depending on the evidence. No single test or formula has been developed which will resolve the question of multiplicity.

(Emphasis added.)

RCM 1003(c)(1)(C) is based on the first three sentences and the last sentence of paragraph 76a (5), 1969 Manual, *supra,* which provided as follows:

The maximum authorized punishment may be imposed for each of two or more separate offenses arising out of the same act or transaction. If one offense is included in the other, the offenses are not separate. Also, the general rule is that offenses are not separate unless each requires proof of an element not required to prove the other. . . .

\* \* \*

When an accused is convicted of two or more offenses which are not separate, the maximum punishment for all of those offenses which merge is the maximum prescribed in the Table of Maximum Punishments for the one carrying the most severe punishment.

The analysis to the 1984 Manual then cites *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and other cases including *United States v. Baker,* 14 MJ 361 (CMA 1983). Drafters' Analysis of RCM 1003(c), 1984 Manual, *supra* at A21–64.1 (Change 3, June 1987).

Case Law

■■■ The Double Jeopardy Clause prohibits multiple prosecutions, multiple punishments, and multiple trials by the same sovereign for the "same offense." *See, e.g., United States v. Teters,* 37 MJ 370 (CMA 1993), *cert. denied,* ___ U.S. ___, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994). What is the same of-

fense? As the Supreme Court stated in *Blockburger v. United States,* 284 U.S. at 304, 52 S.Ct. at 182, the test is "whether each provision requires proof of a fact which the other does not." *See also United States v. Teters, supra.* The burden of proof as to separate offenses is satisfied if "[t]here is no evidence ... that Congress did not intend to allow separate punishment for the two different offenses." *United States v. Woodward,* 469 U.S. 105, 108, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985), *citing Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1142–43, 67 L.Ed.2d 275 (1981). *See United States v. Teters,* 37 MJ at 376. As the Court in *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977), held:

If two offenses are the same under this test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions. Where the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive proceedings. . . .

(Citations omitted.) *See also* Justice Marshall's observation in *Missouri v. Hunter,* 459 U.S. 359, 369, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) (dissenting): "The Double Jeopardy Clause forbids either multiple prosecutions or multiple punishment for 'the same offence.' "

Since *Baker* and changes to the Manual, there have been a number of significant decisions by the Supreme Court on this issue. In *Missouri v. Hunter, supra,* the Court held that the charge of "armed criminal action" and one of a first-degree robbery are not multiplicious for findings or sentence even though the armed criminal action was part of the robbery. *See* 459 U.S. at 368–69, 103 S.Ct. at 679–80.

In *Woodward,* the Court held that willfully failing to report carrying more than $5,000 into the United States and falsely answering the customs agent's question as to whether he was carrying more than $5,000 were not multiplicious for findings or sentence. The

Court followed the separate-elements test of *Blockburger*.

In *United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the Court solidified the "same element" test formulated in *Blockburger*. It also overruled the recent decision in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which combined the "same conduct" test with a *Blockburger* same-elements standard.

In *United States v. Teters*, 37 MJ at 376, we rejected *Baker* in favor of the *Blockburger* rule, which "would be limited to consideration of the statutory elements of the involved crimes." In *Teters* we indicated the question is whether Congress intended

> multiple convictions [or sentencing] at a single trial for different statutory violations arising from the same act or transaction? ... Absent such an overt expression of legislative intent, it can also be presumed or inferred based on the elements of the violated statutes and their relationship to each other.

37 MJ at 376–77.

Following *Blockburger* will provide clear boundaries and be responsive to the need for a workable approach. But as then-Justice Rehnquist has noted: "Our entire profession is trained to attack 'bright lines' the way hounds attack foxes ... [and] soon breaks down what might have been a bright line into a blurry impressionistic pattern." *Robbins v. California*, 453 U.S. 420, 443, 101 S.Ct. 2841, 2854, 69 L.Ed.2d 744 (1981) (dissenting).

Applying *Blockburger, Dixon*, and *Teters* to this case, we will examine the elements of the offenses at issue in appellant's case.

–A–

The elements of specification 1 of Charge II are as follows:

(1) That, at Enterprise, Alabama, between April 19 to May 19, 1991, the accused wrongfully had sexual intercourse with C;

(2) That, at the time, the accused was married to another; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice

of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. *See* para. 3–127*b*, Military Judges' Benchbook at 3–258.3 (Dept. of the Army Pamphlet 27–9 (hereafter Benchbook) (Change 2, Oct. 15, 1986)).

–B–

The elements of specification 2 of Charge II are as follows:

(1) That, at Enterprise, Alabama, between April 19 to May 19, 1991, the accused committed a certain wrongful act with C by engaging in sexual intercourse;

(2) That the act was indecent; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces, or was of a nature to bring discredit upon the armed forces.

"Indecent acts signify the form of immorality relating to sexual impurity which is not only grossly vulgar, obscene and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations." Para. 3–159, Benchbook, *supra* at 3–319 (Change 1, Feb. 15, 1985).

–C–

The elements of specification 1 of Additional Charge II are as follows:

(1) That, at Fort Rucker, Alabama, on or about Sept. or Aug. 1989, the accused committed a certain wrongful act;

(2) This act was with a person he knew to be his stepdaughter, to wit: C, while the accused's marriage was still in existence; and

(3) That under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces, or was of a nature to bring discredit upon the armed forces.

The elements of specification 2 of Additional Charge II are as follows:

(1) That, at Enterprise, Alabama, between April 19 through May 19, 1991, the accused wrongfully

cohabit[ed] in a live-in girlfriend/boyfriend relationship with [C], the stepdaughter of the accused, and at the time the accused was still married to the natural mother of [C], and while the natural father was assigned to the same installation as the accused, by moving into the mobile home of [a friend], of whom the accused was the military supervisor, by sleeping in the same bed of [C], and otherwise and in the presence of the said [friend] acting as sexually active girlfriend and boyfriend with [C][;] [and]

(2) That under the circumstances the conduct of the accused was to the prejudice of good order and discipline in the armed forces, or was of a nature to bring discredit upon the armed forces. *See* para. 60b, Part IV, 1984 Manual, *supra.*

We hold that committing indecent acts and adultery are not multiplicious for findings. Neither Congress nor the President manifested any intent to prohibit the simultaneous convictions for these offenses because they are separate offenses under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Each offense requires proof of an element that is not an element of the other. Adultery requires proof of sexual intercourse between two individuals, one of whom is married. Para. 62, Part IV, 1984 Manual, *supra.* Committing indecent acts requires proof of a certain wrongful and indecent act with another person. Para. 90, Part IV, Manual, *supra.* Here, the indecency was two parties engaging in sexual intercourse when there was a familial relationship between them.

The findings as to specification 1 of Additional Charge II identify wrongful conduct as appellant's sexual intercourse with C in August or September 1989. This approved finding varies from the other offenses as to the dates. Also, specification 2 of Additional Charge II, the general-disorder charge, is another separate offense based on the findings of guilt of this charge. It is analogous to wrongful cohabitation as found in paragraph 69, Part IV, 1984 Manual, *supra.* The elements of the general-disorder charge are separate from adultery or committing indecent acts alleged in Charge II. Moreover, appellant's adultery and indecent-acts offenses were not the means by which he wrongfully cohabitated with her for a month. No evidence has been presented that Congress or the President intended these to be the same offense.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX and WISS concur.

GIERKE, Judge (concurring in part, dissenting in part, and concurring in the result):

I agree with the majority's analysis and conclusions regarding multiplicity, except for that portion pertaining to specification 2 of Additional Charge II. The military judge characterized that offense as a "general disorder." (R. 304) The majority opinion regards it as "analogous to wrongful cohabitation." 40 MJ at 247. Whichever way it is characterized, appellant's conduct with his stepdaughter was criminal only because she was his stepdaughter and he was married to someone else. That same conduct was already charged as incest and adultery. The same conduct should not be charged as both a specific offense and a general disorder. *See* RCM 907(b)(3)(B), Discussion, Manual for Courts–Martial, United States, 1984. I would hold that the "general disorder" in specification 2 of Additional Charge II should have been dismissed as multiplicious with the adultery and incest in specifications 1 and 2 of Charge II.

In any event, I am satisfied that any prejudice as to sentence was cured by the convening authority's substantial reduction of the confinement portion of the sentence. Accordingly, I concur in the result in all other respects.