UNITED STATES

v.

**Eric B. BRITCHER** Lieutenant (Junior Grade), U.S. Coast Guard.

CGCMG 0083.
Docket No. 1031.

U.S. Coast Guard Court of Criminal Appeals.

8 Feb. 1995.

Trial Counsel: Lt Karen E. Lloyd, USCGR.

Detailed Defense Counsel: Lt Monica L. Lombardi, USCGR.

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LCDR Charles Bennardini, USCG.

Before Panel One BAUM, BRIDGMAN, and WIESE, Appellate Military Judges.

WIESE, Judge:

In accordance with his pleas, a military judge found Appellant guilty of three specifications of conduct unbecoming an officer, two specifications of forgery, two specifications of wrongful appropriation and three specifications of larceny, two specifications of dereliction of duty, three specifications of signing a false report and five specifications of making a false official statement, and one specification of fraud against the United States in violation of Articles 133, 123, 121, 92, 107, and 132 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 933, 923, 921, 892, 907, 932, respectively. Appellant's pleas of guilty to three of the specifications of making a false official statement were conditional on the reservation of the right to review and appeal of the military judge's ruling that the statements made to the executive officer of the Coast Guard Cutter ACACIA, which constituted the false official statements, were admissible under MRE 304 and 305.

The Appellant, in entering a plea to one specification of larceny, plead guilty to the lesser included offense of wrongful appropriation in violation of Article 121, UCMJ. The military judge made no finding on the plea, but allowed the trial counsel to present evidence on the larceny charge. Members found the Appellant guilty of the lesser included offense of wrongful appropriation in violation of Article 121, UCMJ.

Appellant was sentenced by members to be confined for thirty days, to forfeit all pay and allowances, to pay a fine of $5,000, to be confined for an additional five months if the fine was not paid, and to be dismissed from the Coast Guard. The convening authority reduced the amount of the fine to $3,707.13, but otherwise approved the sentence. The convening authority's action purported to execute the dismissal, which may only be executed by the Secretary after appellate review has been completed. This Court granted the government's motion to file a modified convening authority's action and promulgating order, which has corrected this error.

This case has been referred for review under Article 66(b) of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b) and Appellant has assigned four errors: (1) that the military judge incorrectly admitted statements made to the executive officer; (2) that the military judge erred when she found that three specifications of signing a false report were not multiplicious for sentencing purposes with three specifications of conduct unbecoming an officer by falsely making the signature of another officer on the same reports; (3) that the Appellant was unfairly prejudiced by the questioning and the argument of the trial counsel during the sentencing phase of the trial; and (4) that this Court lacks jurisdiction because the appointment of civilians as judges violates the Constitution. The case has been briefed and orally argued and is ready for decision.

I

SUPPRESSION OF THE STATEMENTS TO THE EXECUTIVE OFFICER

At trial, Appellant moved to suppress three statements that constituted the basis for three of the specifications of making a false official statement because there had been no compliance with Article 31, UCMJ, 10 U.S.C. § 831. It is those three specifications that were the subject of the conditional guilty pleas.

In order to meet the burden of establishing the admissibility of those statements, the government called the commanding officer (CO) and the executive officer (XO) of the ACACIA and a Coast Guard special agent. The Appellant called no witnesses and offered no evidence on the motion.

After all evidence on the motion had been received, the military judge found, among other things, the following:

Before 21 June 1993, ... [the] CO ... directed [the]

XO ... to have an audit done of the ACACIA imprest fund the first thing in the morning on 21 June 1993. LTJG Britcher was custodian of the imprest fund.

Pursuant to [the CO's] direction, at about 0705 on 21 June [the XO] informed LTJG Britcher that an audit was to be conducted immediately. [The XO] did not ask any questions, did not expect LTJG Britcher to give him any response other than an acknowledgment and was not attempting to elicit a response. LTJG Britcher responded that there would be no need to do an audit, because there was no money, and that there were checks locked in his car in Charlevoix, MI.

Later, [the XO] came to the audit site to look at the imprest fund records. LTJG Britcher offered to have his girlfriend send the checks to the ship by overnight mail. This offer had previously been relayed to [the XO] by someone else. [The XO] accepted the offer and told LTJG Britcher he wanted copies of the checks to be faxed to the ship before they were sent. In doing so, [the XO] did not ask LTJG Britcher any questions, did not expect LTJG Britcher to make a statement to him and was not attempting to elicit a statement from LTJG Britcher. The only response he expected was that LTJG Britcher would later bring him faxed copies of the checks.

Later, LTJG Britcher initiated a conversation with [the XO], stating that it was too late to fax the checks, that his girlfriend had already sent them.... [The XO] directed LTJG Britcher to notify him immediately when the checks came in. On 22 June, after 0705 but before 0915, [the XO] saw LTJG Britcher and asked him if he had received the checks yet. LTJG Britcher replied that he had not. [The XO] directed LTJG Britcher to let him know when the checks arrived. In giving this direction on both occasions, [the XO] did not expect LTJG Britcher to give him a response other than to bring him the checks, and was not attempting to elicit a response.

At 0912 LTJG Britcher initiated a conversation with [the XO], stating "I have the cash," intentionally implying that he had cashed the checks.

At no time during these events did [the XO] or anyone else give Article 31 warnings to LTJG Britcher.

Appellate Exhibit LVIII.

We agree with the military judge that the above facts were established by a preponderance of the evidence as required by MRE 304(c).

Before the completion of the government's presentation of the evidence on the motion, the military judge ruled that both the CO and the XO suspected, or reasonably should have suspected, LTJG Britcher of the offense of dereliction of duty. However, based on the facts found, the military judge ruled that there had been no interrogation of LTJG Britcher and, therefore, no Article 31 warnings were required.

■ The requirements of Article 31 have been interpreted broadly. *U.S. v. Byers*, 26 M.J. 132 (CMA 1988). The U.S. Court of Appeals for the Armed Forces (formerly the U.S. Court of Military Appeals) has held that a conversation, no matter how subtle, designed to elicit a response is interrogation. *U.S. v. Borodzik*, 21 U.S.C.M.A. 95, 44 C.M.R. 149, 1971 WL 12473 (1971). In this case, however, the interactions between the XO and the Appellant were not designed to elicit a response. There was a requirement to conduct an audit of the imprest fund as soon as possible (Prosecution Exhibit 2) and the purpose of the interactions was to ensure that the documentation necessary to meet this requirement was provided. The custodian had a duty to provide the documents necessary for the audit. The Appellant's two statements, made on 21 June, that (1) there was no money and the checks were in his car in Charlevoix and (2) it was too late to fax the checks, were not the result of interrogation. The military judge properly admitted those statements against the Appellant.

■ The third statement, that the Appellant had cashed the checks, was not a part of the factual findings by the military judge. The military judge found only that the Ap-

pellant implied that he had cashed the checks. During the plea-providence inquiry, the Appellant acknowledged that he had indeed stated that he had cashed the checks, but he claimed that he had responded to a specific question from the XO. Since there was no evidence of the making of that statement during the consideration of the motion to suppress, we find that the government did not meet its burden to prove that the statement was not made in response to interrogation. The statement should have been excluded. Consequently, the finding of guilty to the specification that alleged that the Appellant had falsely stated to the XO that he had cashed the checks must be vacated.

## II

MULTIPLICITY FOR SENTENCING PURPOSES OF SPECIFICATIONS ALLEGING SIGNING A FALSE REPORT AND SPECIFICATIONS ALLEGING FALSELY MAKING THE SIGNATURE OF ANOTHER OFFICER

### A. Double Jeopardy Test

At trial, the Appellant asserted that three specifications of signing a false official report were multiplicious with three specifications of conduct unbecoming an officer by falsely making the signature of another officer on those reports. The military judge found them separate for both findings and sentencing purposes. The Appellant argues before this court that the specifications are multiplicious for sentencing purposes.

As recognized by the Air Force Court of Criminal Appeals (formerly the Air Force Court of Military Review), the U.S. Court of Appeals for the Armed Forces in *U.S. v. Teters*, 37 M.J. 370 (CMA 1993), abandoned the " 'fairly embraced,' 'single impulse,' and insistent flow of events' tests of [*U.S. v.*] *Baker* [14 M.J. 361 (CMA 1993)] and its progeny" and embraced the "search for legislative intent." *U.S. v. Neblock,* 40 M.J. 747, 748–749 (AFCMR 1994). *Teters* dealt solely with the question of whether two offenses were multiplicious for findings, since the military judge in that case had already ruled that they were multiplicious for sentencing. In

*U.S. v. Wheeler,* 40 M.J. 242 (CMA 1994), however, the Court of Appeals for the Armed Forces was directly confronted with the issue of multiplicity for both findings and sentencing. In *Wheeler,* the Court restated its question from *Teters* as:

> whether Congress intended "multiple convictions [or sentencing] at a single trial for different statutory violations arising from the same transaction." (Brackets in the original).

40 M.J. at 246. The Court discussed the Manual for Courts–Martial provisions regarding both multiplicity for findings and for sentencing and it quoted from Justice Marshall, dissenting in *Missouri v. Hunter,* 459 U.S. 359, 369, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983), as observing that "[t]he Double Jeopardy clause forbids either multiple prosecutions or multiple punishments for 'the same offense.'" 40 M.J. at 245. The Court, in its analysis, treated the question of multiplicity as a unitary question and did not separate the analysis of the findings issue from the sentencing issue. Indeed, once the Court found that the offenses in question were not multiplicious for findings, it ended its inquiry.

Based on *Teters* and *Wheeler,* we view the issue of multiplicity to be a single analysis, applying the Double Jeopardy test. If the specifications in question pass the Double Jeopardy test, they are not multiplicious for any purpose.

### B. Specific Step Analysis

We agree with the conclusion of the Air Force Court of Criminal Appeals that the analysis required by *Blockburger v. U.S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and *Teters* must be undertaken in specific steps. We now analyze the instant case according to that methodology.

(1) Step One—Same Act or Course of Conduct?

The first inquiry is whether the coupled offenses arise out of the same act or course of conduct.

██ Specification 1 of Charge V alleged that on or about 29 September 1992, the

Appellant signed a false Cashier's Accountability Report. Specification 1 of Charge I alleged that, on or about 29 September 1992, the Appellant falsely made the signature of his commanding officer on the same Cashier's Accountability Report.

Specification 2 of Charge V alleged that on or about 16 February 1993, the Appellant signed a false Cashier's Accountability Report. Specification 2 of Charge I alleged that, on or about 16 February 1993, the Appellant falsely made the signature of his commanding officer on the same Cashier's Accountability Report.

Specification 3 of Charge V alleged that on or about 27 May 1993, the Appellant signed a false Cashier's Accountability Report. Specification 3 of Charge I alleged that, on or about 27 May 1993, the Appellant falsely made the signature of another officer on the same Cashier's Accountability Report.

We find that the coupled offenses arise out of the same course of conduct—the preparation of the Cashier's Accountability Reports to be submitted by the Appellant.

### (2) Step Two—Legislative Intent

Once we have determined that the offenses arose out of the same course of conduct, the next step is to determine whether Congress intended that the Appellant be subject to conviction and sentencing for the two different violations arising from the same course of conduct. There is no indication of legislative intent on the face of the provisions in question. We have consulted the same authorities that the Court of Military Appeals consulted when faced with the question of Congressional intent regarding Articles 133 and 123 in *U.S. v. Timberlake*, 18 M.J. 371 (CMA 1984) and we conclude that there is no clearly expressed legislative intent regarding prosecution and sentencing for offenses under Articles 133 and 107.

### (3) Step Three—Comparison of Elements

The next step is to apply the *Blockburger* rule of construction. This rule requires a comparison of the elements required to prove each offense. If each statutory offense requires proof of an additional element that the other does not, then they are not multiplicious.

The elements of the alleged violations of Article 107 in this case, are:

(1) That the Appellant signed the Cashier's Accountability Report, an official document;

(2) That the Cashier's Accountability Report was false in that it contained figures fabricated by the Appellant;

(3) That the Appellant knew that the Cashier's Accountability Report was false at the time of signing; and,

(4) That the false document was made with intent to deceive.

The elements of the alleged violation of Article 133 in this case, are:

(1) That the Appellant falsely made the signature of another officer on the Cashier's Accountability Report; and,

(2) That, under the circumstances, this act constituted conduct unbecoming an officer and gentleman.

Each of the offenses very clearly require the proof of an element not required of the other.

If the sole false entry on the Cashier's Accountability Report had been the signature of the other officer, we would have been confronted with a situation of clear multiplicity, *U.S. v. Timberlake*, 18 M.J. 371 (CMA 1984), or one of a lesser included offense, *U.S. v. Deland*, 22 M.J. 70 (CMA 1986). The facts of the case do not, however, present that problem. First, the falsity alleged in the Article 107 charge was that of fabrication of figures, not the signatures. Second, the signing of the Cashier's Accountability Report by the cashier, in this case the Appellant, occurs before any other officer, the commanding officer or the auditor, signs and the cashier's signature does not purport to attest to the validity of the other officer's signature. The cashier's signature attests only to accuracy of the information in the account. The act of signing a false cashier report is complete before the other officers' signatures are required to be placed in the report.

Because each of the charged offenses requires proof of an element not required of

the other, we hold that Specifications 1, 2, and 3 of Charge V are not multiplicious with Specifications 1, 2, and 3, of Charge I, respectively.

## III

### TRIAL COUNSEL'S QUESTIONING AND ARGUMENTS

■ We have considered Appellant's claim that he was unfairly prejudiced by the questioning and argument of the trial counsel during the sentencing phase of the trial. We find no merit to that contention. During cross examination of a defense witness, the trial counsel asked if it wasn't true that most Coast Guard members who attended inpatient alcohol rehabilitation were immediately discharged from the Coast Guard upon completion of the treatment. The defense counsel objected to the question and the military judge sustained the objection. No answer was given by the witness. No curative instruction was requested at the time and none was given by the military judge. During the preliminary instructions, the military judge had instructed the members that when she sustained an objection they were to disregard the question. There is no evidence that the members did not follow that instruction of the military judge.

■ During the trial counsel's closing statement on sentencing, she stated that the "government wants nothing more than for Mr. Britcher to be rehabilitated. But it's not here in the Coast Guard. There is no place for him here." Contrary to the Appellant's claim, it is clear from the totality of the argument of the trial counsel that she was arguing for dismissal as a punitive measure and was not suggesting that the members should dismiss the Appellant because it was the proper administrative result. The military judge properly instructed the members that they were not to consider administrative procedures or regulations during their deliberations and there is no evidence that the members did not follow that instruction of the military judge.

We conclude that the Appellant was not improperly prejudiced by either the questioning or the argument of the trial counsel, and reject the third assignment of error for that reason.

## IV

### APPOINTMENT OF JUDGES

Appellant's fourth assignment of error challenges the appointment of civilian judges on this Court. *U.S. v. Carpenter*, 37 M.J. 291 (CMA 1993), petition for cert. filed, No. 93–676 (U.S. 29 October 1993), is dispositive and the assignment is, therefore, rejected.

### CONCLUSION

Based on our determination to exclude Appellant's third statement that he had cashed the checks, as previously discussed, the finding of guilty to Specification 8 of Charge V is set aside and the specification is dismissed. The remaining findings of guilty are affirmed. Upon reassessment of the sentence in light of the affirmed findings of guilty, we are satisfied that no lesser punishment would have been imposed by the Court if the dismissed offense had not been considered. We have also determined that the sentence is appropriate for this accused and the remaining offenses. The sentence is correct in law and fact and should be approved. Accordingly, the sentence approved below is affirmed.

Chief Judge BAUM and Judge BRIDGMAN concur.