# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## Washington, DC

## UNITED STATES

### v.

### Daniel F. CZESCHIN
### Fireman Apprentice, U.S. Coast Guard

### CGCMG 0157

### Docket No.  1125

### 18 December 2000

General Court-Martial convened by Commanding Officer, Maintenance and Logistics Command Atlantic.  Tried at Norfolk, Virginia on July 12 -13, 1999.

| | |
|---|---|
| Military Judge: | CAPT Robert Bruce, USCG |
| Trial Counsel: | LCDR Scott A. Memmott, USCG |
| Assistant Trial Counsel: | LTJG Patrick M. Flynn, USCGR |
| Detailed Defense Counsel: | LT Brian D. Phelan, JAGC, USNR |
| Appellate Defense Counsel: | LTJG Loren A. Friedel, USCGR |
| Appellate Government Counsel: | LTJG Mark A. Cunningham, USCGR |

## BEFORE
## PANEL ONE
## BAUM, KANTOR, AND CASSELS
Appellate Military Judges

CASSELS, Judge:

Appellant was tried by a general court-martial, military judge alone.  Twelve offenses were referred to trial.  Pursuant to his guilty pleas entered in accordance with a pretrial agreement, Appellant was found guilty of one specification of making a false official statement in violation of Article 107 of the Uniform Code of Military Justice (UCMJ); four specifications of wrongful use of marijuana in violation of Article 112a, UCMJ; one specification each of wrongful introduction of marijuana and cocaine onto a vessel used by the armed forces in violation of Article 112a, UCMJ; one specification of wrongful distribution of marijuana in violation of Article 112a, UCMJ; one specification each of wrongful importation of marijuana and cocaine into the customs territory of the United States while on board a vessel used by the armed forces in violation of Article 112a, UCMJ, and one specification of impeding an investigation in violation of Article 134, UCMJ.  One specification of wrongful distribution of cocaine was withdrawn in accordance with the pretrial agreement.  Appellant was sentenced to a bad-conduct discharge, confinement for two years, reduction to pay grade E-1, and forfeiture of all pay and allowances.  Pursuant to the

terms of the pretrial agreement, the convening authority approved the sentence as adjudged, and suspended confinement in excess of 15 months for a period of 12 months.

Before this Court, Appellant has assigned two errors: (1) that specification 5 and specification 8 of Charge II were multiplicious for sentencing, and (2) that the sole specification under Charge I failed to state an offense cognizable under the UCMJ.

## Facts

While Appellant was assigned to the Coast Guard Cutter MOHAWK, the Cutter departed its homeport of Key West, Florida on 8 April 1998 on a seven week law enforcement patrol in the Caribbean. From 27 April to 1 May 1998, CGC MOHAWK conducted a port call at Cartagena, Colombia. Among Appellant's other activities there, which are the subject of specifications not relevant to the two assigned errors, he obtained in Cartagena on or about 1 May a brick of marijuana and a ping-pong ball sized amount of cocaine wrapped in foil. That same day, he taped the marijuana to his leg, taped a friend's marijuana brick to his other leg, placed the ball of cocaine in his pocket and walked on board CGC MOHAWK. Appellant placed the marijuana and cocaine in CGC MOHAWK's engineering locker located adjacent to the engineering berthing area where Appellant slept. On 1 May 1998, CGC MOHAWK departed Cartagena, Colombia with Appellant and his stash of marijuana and cocaine on board, and, after a port call in Aruba, returned to Key West, Florida on 24 May 1998. There, Appellant removed the marijuana and cocaine from the engineering locker, took the drugs ashore, and stored them in his barracks room. Shortly after his return to homeport and a positive result (for marijuana) on a lab test of Appellant's urine, Appellant was interviewed in Key West on 19 June 1998 by two Coast Guard Investigative Service (CGIS) Special Agents. Appellant acknowledged understanding his Article 31(b) rights that were explained to him by the agents and waived those rights in writing. Appellant then supplied a sworn, written affidavit in which he denied having used marijuana. "I do not smoke marijuana [sic] at all," and "I do not know of anyone who currently smokes marijuana [sic]." During the inquiry into the providence of his pleas, Appellant admitted under oath that these statements were untrue, that he knew they were false at the time he made them, and that he lied in order to deceive the Coast Guard investigators.

## I. Multiplicity for Sentencing: Introduction Onboard and Importation

First, Appellant contends that specification 5 of Charge II (introducing cocaine onto the CGC MOHAWK while moored in a Colombian port) and specification 8 of Charge II (importing cocaine into the customs territory of the United States) are multiplicious for sentencing because CGC MOHAWK, while overseas, is legally deemed "an extension of the soil of the United States." Appellant's Assignment of Errors of 13 July 2000, p. 10. Therefore, he reasons, by introducing cocaine aboard CGC MOHAWK while overseas, Appellant did, at the same time and by the same act, import cocaine into the customs territory of the United States, making the elements of the two specifications essentially identical, and making the two specifications multiplicious for sentencing.

**United States v. Daniel F. CZESCHIN, No. 1125 (C.G.Ct.Crim.App. 2000)**

Appellant raised this issue in the discussion of the maximum punishment during the providence inquiry and at sentencing.[1] The military judge rejected his contention, finding that the two specifications were separate offenses, occurring weeks apart. We agree. The test for determining whether two charges are multiplicious where the same act or transaction constitutes a violation of two distinct statutory provisions is whether each offense requires proof of an additional element that the other does not. *United States v. Britcher*, 41 M.J. 806 (C.G.Ct.Crim.App. 1995), citing *United States v. Neblock*, 40 MJ 747 (AFCMR 1994); *United States v. Wheeler*, 40 M.J. 242 (C.M.A. 1994); and *United States v. Teters*, 37 M.J. 370 (C.M.A. 1993). The purpose of this rule is to ensure that criminal defendants are not subjected to double jeopardy by being twice punished for the same offense. See also *United States v. Quiroz*, 53 M.J. 600 (N.M.Ct.Crim.App. 2000). In *Britcher,* we reviewed the development of the test for multiplicity and concluded that, "based on *Teters* and *Wheeler*, we view the issue of multiplicity to be a single analysis, applying the Double Jeopardy test. If the specifications in question pass the Double Jeopardy test, they are not multiplicious for any purpose." *Britcher* at 809.

We decided in *Britcher* that, "the analysis required by *Blockburger v. U.S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and *Teters* must be undertaken in [three] specific steps." Id. at 809. We analyze these two specifications according to the same methodology we used in *Britcher*.

The first step is to determine whether the two offenses arise out of the same act or course of conduct. If the charged offenses are based upon separate acts, then further multiplicity analysis is unnecessary. See *United States v. Beale*, __M.J.__(C.G.Ct. Crim.App. 11 December 2000). We agree with the military judge that these two offenses stem from separate acts. Under the facts of this case, the offenses occurred weeks apart. The introduction offense was complete on or about 1 May when Appellant brought the cocaine aboard the CGC MOHAWK. And, as explained below, the importation offense was complete on or about 24 May when CGC MOHAWK returned to the customs territory of the United States. Appellant admitted during the providence inquiry that he could have dumped the cocaine overboard during that three-week interval and avoided the importation offense if he had so desired. Rather, he chose to retain the cocaine on board for the remainder of the patrol, motivated by the higher cost of cocaine in Key West as compared to what he had paid in Colombia. However, even if the introduction and importation offenses in this case are viewed as the parts of a single act, transaction, or continuous event as alleged by Appellant, we find the two offenses are not multiplicious under the remaining steps of the *Britcher* analysis.

The next step, outlined in *Britcher*, is to determine whether Congress intended that Appellant be subject to conviction and sentencing for these two violations of Article 112a arising from the same course of conduct. There is no legislative intent apparent on the face of

---

[1] At trial Appellant also alleged that specification 4 of Charge II (introduction of marijuana onto a vessel of the armed forces on or about 1 May 1998) and specification 7 of Charge II (importation of marijuana into the customs territory of the United States on or about 24 May 1998) were multiplicious for sentencing purposes. This was not assigned as an error by Appellant on appeal. The issues surrounding those two specifications are similar to the issues we address in regard to specifications 5 and 8 of Charge II in this opinion, and we find specifications 4 and 7 of Charge II are separate offenses for sentencing purposes.

the provision in question nor in the legislative history. Article 112a, UCMJ, was codified from section 8(a) of the Military Justice Act of 1983, Pub. L. 98-209, 97 Stat. 1403. The House Report on that Act contains only the following statement regarding this provision:

> *Drug abuse in the armed forces*. Abuse of controlled substances is one of the most significant disciplinary problems facing the armed forces. In contrast to other offenses, however, criminal use of drugs is not the subject of a specific punitive article in the Uniformed [sic] Code of Military Justice. This has led to unnecessary litigation concerning the use of regulations and the general prohibition against disciplinary offenses as the basis for drug-offense prosecutions. The amendment would correct this deficiency by establishing a specific punitive article prescribing drug abuse offenses.

H. R. REP. No. 98-549, U.S. Code Cong. and Adm. News, p. 2177, at 2182-83. The fact that the maximum punishment prescribed for Article 112a violations is stepped up when the accused is on board a vessel of the armed forces indicates the President's determination that drug involvement poses heightened dangers to safety and readiness in certain situations unique to the military, but is not indicative of Congressional intent. Manual for Courts Martial, United States, Pt. IV, ¶ 37.e. (MCM, or Manual)[2], and MCM Appendix 23, Analysis of Punitive Articles, ¶ 37. Our review reveals no evidence that Congress intended for an accused convicted of, and subject to punishment for, importing a controlled substance in violation of this statute to escape separate punishment for introduction where he elected to employ a vessel of the armed forces in his criminal enterprise.

The third step is to apply the *Blockburger* rule of construction, which involves a comparison of the elements, required to prove each offense. *See also* RCM 1003(c)(1)(C). If each offense requires proof of an additional element that the other does not, then the offenses are not multiplicious. The elements of the introduction offense alleged in specification 5 of Charge II, under the facts alleged here, are that (1) the Appellant introduced onto a vessel used by the armed forces a certain amount of a controlled substance; and (2) the introduction was wrongful. The elements of the importation offense alleged in specification 8 of Charge II, under the facts alleged here, are that (1) the Appellant imported into the customs territory of the United States a certain amount of a controlled substance; and (2) the importation was wrongful.

If, as argued by the Appellant, proof of the introduction of the cocaine onto the cutter also proves the importation of that cocaine into the customs territory of the United States, then the two specifications are multiplicious. But the record reveals that is not the case. The introduction of cocaine onto the CGC MOHAWK (specification 5 of Charge I) occurred when Appellant brought the cocaine on board while the cutter was moored in Colombian waters on or about 1 May. The importation of that cocaine into the customs territory of the United States (specification 8 of Charge I) occurred when the CGC MOHAWK returned to its homeport of Key West, Florida. The Manual defines the customs territory of the United States as "only the States, the District of Columbia and Puerto Rico". MCM, Pt. IV, ¶ 37.c.(9).

---

[2] All cites to the MCM refer to the 1998 edition. Cited provisions of the MCM remain unchanged in the 2000 edition unless otherwise noted.

**United States v. Daniel F. CZESCHIN, No. 1125 (C.G.Ct.Crim.App. 2000)**

The Analysis of Punitive Articles in MCM Appendix 23, ¶ 37 explains that "the definition of 'customs territory of the United States' is based on 21 U.S.C. § 951(a)(2) and on general headnote 2 to the Tariff Schedules of the United States." 21 U.S.C. § 951(a)(2) is interpreted in *United States v Alvarado*, 982 F.2d 659 (1st Cir. P.R. 1992). There, the First Circuit Court of Appeals interpreted "customs territory of the United States" in 21 U.S.C. § 952(a) to "extend only twelve miles from the coast."[3] *In accord, United States v Julio Coneo-Guerrero*, 148 F.3d 44 (1st Cir. P.R. 1998). By this definition, the importation alleged in Specification 8 of Charge II occurred on or about 24 May 1998 when CGC MOHAWK, carrying the cocaine brought on board by Appellant three weeks earlier, closed to within twelve miles of the Florida coast as the MOHAWK approached Key West.

Appellant argues that a military vessel of the United States in a foreign port is an extension of the soil of the United States and, therefore, introduction of the cocaine onto the vessel was, at the same time, importation of the cocaine into the United States. We disagree. It is well accepted in international law that a nation's jurisdiction and laws accompany her ships not only over the high seas, but also into the ports and harbors of other nations. *United States v. Rogers,* 150 U.S. 249 (1893) and *United States v. Flores*, 289 U.S. 137 (1933). In support of this principle, it has been said that these vessels are considered to be a part of the territory of the sovereign whose flag they fly. Other authorities, however, view this concept merely as a legal fiction to support the argument (1) that some law must apply on board the vessel, (2) that it would be unworkable if the applicable law changed every time a vessel crossed a maritime boundary, and (3) that experience has revealed no better rule. *Lauritzan v. Larsen*, 345 U.S. 571, 585; 73 S.Ct. 921 (1953). Regardless, the concept that a vessel may be an extension of the territory of its flag is a sovereignty principle applicable to questions of jurisdiction. There is no question that the United States can exercise jurisdiction over a person who commits offenses aboard a U.S. flag vessel while in foreign territorial seas, or even internal waters. The fact that the vessel is a warship of the United States that enjoys sovereign immunity only serves to buttress this argument. *The Schooner Exchange*, 11 U.S. (7 Cranch) 116 (1812). However, the fact that United States domestic law extends to U.S. vessels wherever they may be located does not mean that such vessels are also a part of the "customs territory of the United States." The "customs territory of the United States" has a geographical limit and is simply an element of the offense. At most, the "customs territory of the United States" does not extend beyond our customs waters, which in turn, extend no further than twelve nautical miles from the U.S. baseline.[4] *United States v. Goggin*, 853 F.2d 843, 845 (11th Cir. 1988). Therefore, when Appellant brought cocaine aboard the CGC MOHAWK while it was moored in the internal waters of a foreign nation, he did not import it into the "customs territory of the United States," but only did so weeks later when the CGC MOHAWK came within twelve miles of the coast of Florida.

---

[3] At sea, references to miles are to nautical miles. *See* Carmichael, *At Sea with the Fourth Amendment*, 32 Miami L.Rev. 51 (1977); footnotes 15 & 16 and accompanying text. The distinction between statutory miles and nautical miles; and between measuring from the coast or the baseline, is not significant to our holding in this case.

[4] The August 1999 Presidential Proclamation extending the contiguous zone to 24 nautical miles from the baselines of the United States took effect subsequent to the events at issue here, and does not affect our holding. Proclamation No. 7219, 64 Fed. Reg. 48,701 (1999).

We, therefore, decide, under the facts of this case, that as to the two offenses under Article 112a, UCMJ, each requires proof of an element (i.e., the first listed element as presented above) that the other does not. The two specifications are, therefore, not multiplicious for sentencing.

## II. Failure to State an Offense under Article 107

In Appellant's second assignment of error, he asserts that the military judge erred in denying a motion to dismiss the sole specification under Charge I, alleging a violation of Article 107, in that it fails to state an offense cognizable under the UCMJ. That specification alleges:

> In that Fireman Daniel F. Czeschin, U. S. Coast Guard, on active duty and assigned to USCGC MOHAWK (WMEC 913), did, at or near Key West, Florida, on or about 19 June 1998, with intent to deceive, make to Coast Guard Investigative Service Special Agent Richard A. Norman an official statement, to wit: "I do not smoke marajuana [sic] at all," and "I do not know of anyone who currently smokes marajuana [sic]," which statement was totally false, and was then known by the said Fireman Daniel F. Czeschin to be so false.

Appellant contends that this specification does not state an offense because, according to MCM, Pt. IV, ¶ 31.c.(6)(a ):

> A statement made by an accused or suspect during an interrogation is not an official statement within the meaning of [Article 107] if that person did not have an independent duty or obligation to speak.

### Effect of MCM, Pt. IV, ¶ 31.c.(6)(a) on Sufficiency of Article 107 Specification

A specification is sufficient if it alleges every element of the charged offense, expressly or by necessary implication. RCM 307(c)(3); *United States v. Smythe*, 37 M.J. 804 (CGCMR 1993). Absent a contrary intent expressed in the Constitution or a statute, we adhere to the Manual's elements of proof. *United States v. Guess*, 48 M.J. 69 (1998). There are four elements of an offense under Article 107. They are stated in MCM, Pt. IV, ¶ 31.b.:

> 31b*: Elements.*
> (1) That the accused … made a certain official statement;
> (2) That the … statement was false in certain particulars;
> (3) That the accused knew it to be false at the time of … making it; and
> (4) That the false … statement was made with intent to deceive.

The specification alleges each of these four elements. We find that even if the President's explanation in MCM, Pt. IV, ¶ 31.c.(6) limits what constitutes an official statement, it does not change any element of an offense under Article 107, UCMJ. Our finding in this regard is based upon *United States v. Solis*, 46 M.J. 31 (1997), where our

higher Court stated that "because this guidance [in ¶ 31c(6)] is not based upon the statutory elements of the offense, it does not impose upon the prosecution an affirmative obligation to prove such an independent duty or obligation." The existence of an independent duty to speak is not an element of an Article 107 offense, and therefore need not be alleged in the specification. We, therefore, find that the specification under Charge I does state an offense under Article 107, UCMJ.

## Providence of Plea
### MCM, Pt. IV, ¶ 31.c.(6)(a) as a Possible Defense to Offense under Article 107

Although Appellant has not assigned any error to the military judge's acceptance of his guilty plea to the false official statement specification, we address the issue in light of Appellant's arguments related to MCM, Pt. IV, ¶ 31.c.(6)(a). Appellant's unconditional guilty plea waives objections related to factual issues of guilt. RCM 910(j). However, if the absence of an independent duty of Appellant to speak during the interrogation in which he made a false statement is a defense to the false official statement specification under Charge I, and if that defense was raised at trial, then the military judge was obliged to satisfy himself that there was a factual basis for the plea. If it appeared that the accused entered the plea improvidently, the military judge was required to enter a plea of not guilty to that specification and charge. Article 45(a), UCMJ; RCM 910(e), (h). The standard for finding error in a judge's acceptance of a guilty plea is whether the record of trial shows a substantial basis in law and fact for questioning the guilty plea. *United States v. Logan*, 22 U.S.C.M.A. 349, 47 C.M.R. 1 (1973); *United States v. Clark*, 28 M.J. 401 (CMA 1989); *United States v. Prater*, 32 M.J. 433 (1991). We find that this record does not and find no error in the military judge's acceptance of this plea.

Appellant, in the context of his second assignment of error, urges that we apply a "hierarchy of rights" analysis to this Manual provision similar to that applied to another explanatory provision in the Manual in *United States v. Davis*, 47 M.J. 484. *Davis* found that the President's interpretation, in MCM, Pt. IV, ¶ 54.c.(4)(a)(ii), limited the term "dangerous weapon." That Manual provision stated "an unloaded pistol, when presented as a firearm and not as a bludgeon, is not a dangerous weapon or a means of force likely to produce bodily harm, whether or not the assailant knew it was unloaded." *Davis* held that where the President in the Manual unambiguously gives an accused greater rights than those conveyed by higher sources, the Court should abide by that decision unless it clearly contradicts the express language of the Code. Finding no such contradictory intent, *Davis* gave effect to the MCM explanatory provision, and held that an unloaded weapon is not a dangerous weapon under Article 128.

In the context of his second assignment of error, Appellant also cites *Solis*, *supra*, in which the Court of Appeals of the Armed Forces noted MCM, Pt. IV, 31.c.(6)(a) and its relationship to the offense of false official statement under Article 107, UCMJ. That decision, however, left open whether "these provisions are intended to establish a procedural right that can be invoked by an accused or whether they constitute internal guidelines intended only to regulate government conduct." *Solis*, at 35-36. We note that *Solis*, in rejecting the "exculpatory no" doctrine, stated, "a statement made to the AFOSI, when that agency is

conducting an official investigation, is an "official statement" within the meaning of [Article 107]", citing *United States v. Dorsey*, 38 M.J. 244 (CMA 1993); *United States v. Prater, supra* ("where warnings under Article 31 are given to the criminal suspect … his duty to respond truthfully to criminal investigators, if he responds at all, is now sufficient to impute officiality to his statements for purposes of Article 107"); and *United States v. Jackson*, 26 M.J. 377 (CMA 1988)("even if not subject to an independent 'duty to account,' a service member who lies to a law enforcement agent conducting an investigation as part of his duties has violated Article 107).  The Court, in a recent decision, *United States v. Nelson*, 53 M.J. 319 (2000), continues to expressly leave open the matter of whether MCM, pt. IV,  31.c.(6)(a) establishes an affirmative defense to the offense of false official statement based on an accused's lack of an independent duty to speak during an interrogation.

We need not decide whether MCM, Pt. IV, ¶ 31.c.(6)(a) establishes a defense to a false official statement offense under Article 107, UCMJ.  On the record in this case, and considering that our higher Court has left the possibility of such a defense as an open question, we find that the record does not show a substantial basis in law or fact for questioning Appellant's guilty plea to that specification.  At trial Appellant moved to dismiss the Article 107 specification for failure to state an offense.  Appellant's arguments focused on the legal sufficiency of the Article 107 specification, and did not assert that the Manual provision might serve as a basis for a possible defense to that specification.  The military judge denied the motion.  In ruling on the motion, the military judge addressed the import of MCM, Pt. IV, ¶ 31.c.(6)(a), adopting the view of the Navy-Marine Corps Court of Criminal Appeals that this Manual provision is a now-incorrect statement of the law, citing *United States v. Watkins*, 35 M.J. 709 (N.M.C.M.R. 1992) and *United States v. Smith*, 1998 CCA Lexis 208 (N.M.Ct.Crim.App. 1998) (unpublished).  In the dialogue with the military judge on the motion, it is clear that Appellant did not view the Manual provision as an affirmative defense.  After unsuccessfully attacking the legal sufficiency of the specification, Appellant entered an unconditional guilty plea. The military judge's inquiry into the plea was thorough.  After reviewing the elements of this offense, during which the issue of an independent duty to speak was not mentioned, Appellant said he understood and admitted each element.  The military judge asked counsel to propose additional questions, but none were offered pertaining to Appellant's independent duty to speak or lack thereof.  After reviewing all the elements of all the offenses to which Appellant plead guilty, the military judge asked Appellant if he believed he had any legal defenses to the charges and specifications to which he had entered pleas of guilty.  Appellant responded in the negative.  The military judge then asked Appellant's counsel if he was aware of any facts not already discussed that may constitute a legal defense to the charges and specifications to which the accused had entered pleas of guilty.  Defense counsel responded in the negative.  The military judge then reminded the accused and counsel of the motion to dismiss the specification under Charge I for failure to state an offense, which had been denied. The military judge stated his understanding that "as an attack on the sufficiency of the charge that would not be waived by a plea of guilty."  Both counsel agreed.  We conclude that this record does not show a substantial basis in law or fact for questioning the guilty plea to the specification under Charge I.

We have reviewed the record in accordance with Article 66, UCMJ.  We determine that the findings and sentence are correct in law and fact and on the basis of the entire record

should be approved.  Accordingly, the findings and sentence, as approved and partially suspended, are affirmed.

Chief Judge Baum and Judge Kantor concur.



For the Court,


//s//
James P. Magner
Clerk of the Court